RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 7/17/09
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LACY KING, ET AL. | CIVIL ACTION NO. 07-0625 |
| VERSUS | JUDGE ROBERT G. JAMES |
| DR. DONALD PERRY, ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 87] filed by Defendants Louisiana Patients Compensation Fund Oversight Board and The Louisiana Patients Compensation Fund (collectively, "the Fund") on Plaintiffs' medical malpractice claims. Plaintiffs include Lacy King, Teresa Bell, Ricky Diggs, Stephanie Diggs, Melinda Diggs Harris, Melissa Diggs, and Tomekia Diggs, appearing individually and on behalf of the Beatrice King Estate (collectively referred to as "Plaintiffs").

The Fund moves for summary judgment on the basis that the healthcare providers, Dr. Donald Perry ("Dr. Perry"), Dr. Chime Adiele ("Dr. Adiele"), and Madison Parish Hospital ("MPH"), did not breach the standard of care.

For the following reasons, the Motion for Summary Judgment is GRANTED IN PART with respect to Dr. Adiele's actions and DENIED IN PART with respect to Dr. Perry's January 2, 2001 actions. The Court gives notice of its intent to *sua sponte* grant summary judgment in favor of the Fund for MPH's actions and Dr. Perry's January 3, 2001 actions.

I.  FACTUAL AND PROCEDURAL HISTORY

At 3:55 A.M. on January 2, 2001, Beatrice King ("King") came to the MPH emergency room and was examined by Dr. Perry. Dr. Perry diagnosed flu-like illness and prescribed several

medications, including Catapres, Symmetrel, Motrin, Phenergan Stodal, Endol HD, and possibly Erythromycin. King was discharged at 5:25 A.M. *See* [Doc. No. 97-1, Exh. A].

Later that morning, Dr. Perry prescribed another medication, Coprofen. *See* [Doc. Nos. 97-1, Exh. B; 8, p. 3, ¶2].

At 12:45 A.M. on January 3, 2001, King came back to the MPH emergency room complaining of a raised rash over her body that developed two hours after she took the medications prescribed by Dr. Perry. King was examined by Dr. Adiele, who prescribed a number of medications to treat a possible allergic reaction. *See* [Doc. No. 97-1, Exh. B].

Although some of following facts are in dispute and/or are not supported by documentary evidence, the Court includes them for contextual purposes only.

At 4:00 A.M., Dr. Adiele discussed King's condition with Dr. Perry, and King was admitted to the hospital around 4:30 A.M. with orders for lab work and a chest x-ray to be completed between 6:00–7:00 A.M.

At 8:30 A.M., Dr. Perry came to MPH to review King's lab work and x-ray, which had not been done at that time. He ordered that an x-ray be done promptly.

At 9:30 A.M., Dr. Perry reviewed the x-ray with a radiologist, and King was diagnosed with pneumonia.

At 9:40 A.M., Dr. Perry prescribed Claforan, an antibiotic.

At some point, King's condition deteriorated, and around 10:00 A.M., she was transferred to Parkview Hospital in Vicksburg, Mississippi.

After King was transferred, she went into cardiac arrest and died after efforts to resuscitate her were unsuccessful.

On August 26, 2005, Plaintiffs filed suit against Defendants in the Sixth Judicial District Court, Madison Parish, State of Louisiana. [Doc. No.1].

On April 10, 2007, Defendants removed the case to this Court.

On January 22, 2008, the Court granted summary judgment in favor of MPH. [Doc. Nos. 33 & 34].

On July 7, 2008, the Court approved the settlement reached by Plaintiffs and Drs. Adiele and Perry and the United States of America ("USA"). *See* [Doc. No. 62]. The parties agreed that

> [P]laintiffs shall reserve all rights as against the UNITED STATES OF AMERICA, to the extent that the UNITED STATES OF AMERICA has been substituted as defendant for Donald Perry, M.D. with regard to any allegations of fault arising out of Donald Perry, M.D.'s treatment of Beatrice King on January 3, 2001, insofar as those claims are covered under the Federal Tort Claims Act.

[Doc. No. 62, p. 2].

On June 12, 2009, the Fund filed a Motion for Summary Judgment. [Doc. No. 87].

On July 1, 2009, Plaintiffs filed an untimely opposition. [Doc. No. 93].

On July 10, 2009, the Fund filed a reply. [Doc. Nos. 97 & 98].

## II. LAW ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if

proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Medical Malpractice Claims

The Fund is liable for the medical malpractice, if any, committed by qualified healthcare providers under the Louisiana Medical Malpractice Act ("LMMA"). *La. Patients' Comp. Fund Oversight Bd. v. St Paul Fire & Marine Ins. Co.*, 411 F.3d 585, 586 (5th Cir. 2005) ("The Fund's purpose is specific and limited: the satisfaction of excess judgments against health care providers qualified under the LMMA.") (internal quotations and citation omitted).

"To recover on a claim of medical malpractice, Louisiana law requires that a plaintiff prove each of the following: (1) the applicable standard of care, (2) that the defendant breached the standard of care, and (3) that the defendant's breach caused the plaintiff's injury." *Davis v. Bio-Medical Applications of La. LLC*, No. 08-31034, 2009 U.S. App. LEXIS 13345, at *6–7 (5th Cir. June 22, 2009) (citing LA. REV. STAT. § 9:2794).

The Fund moves for summary judgment on the basis that the healthcare providers, Drs. Perry and Adiele and MPH, did not breach the standard of care. For support, the Fund relies on the opinions of the Louisiana Medical Review Panel and their expert, Dr. Mark Cimino, that all three healthcare providers complied with the standard of care. *See* [Doc. Nos. 88 & 87-4].

The Court finds that the Fund has established through competent evidence that the healthcare providers did not breach the standard of care. The burden shifts to Plaintiffs to controvert that evidence.

Plaintiffs offer the sworn statement of their expert, Dr. Scott Irby.[1] [Doc. No. 93-3]. Plaintiffs contend that,

> [a]ccording to Dr. Irby, the defendants fell below the standard of care for the following reasons:
>
> 1. Failing to timely order an antibiotic, despite bilateral pneumonia and a temperature in excess of 104 degrees. When the antibiotic was finally ordered and administered, it was too late;
>
> 2. When the antibiotic was finally ordered, what was ordered was Claforan, which should not be given to patients who are allergic to penicillin. Ms. King was allergic to penicillin. The ordering of the Claforan when Ms. King was allergic to penicillin was enough alone to cause Ms. King to die.
>
> 3. The continuation at the hospital of the Amantadine that was prescribed to Ms. King at Dr. Perry's office on the morning of the allergic reaction, even though Ms. King presented to the hospital with a severe allergic reaction.

---

[1] In their reply, the Fund contends, without providing authority, that Dr. Irby's statement is "not sworn to, signed nor was an Oath administered to him in the text thereof. As a result it does not satisfy the requirements of a supporting Affidavit." [Doc. No. 98, p. 2]. The court reporter who transcribed his testimony certified "that SCOTT IRBY, M.D., after having been duly sworn by me upon authority of R.S. 37:2554, did testify as set forth in the foregoing sworn statement." [Doc. No. 93-3, p. 19]. The Court finds that Dr. Irby testified under oath.

5

    4.  Failure to diagnose and treat her pneumonia.

[Doc. No. 93, p. 3].

  **1.  MPH**

The Court previously granted summary judgment in favor of MPH, finding that there were no genuine issues of material fact as to its liability. *See* [Doc. No. 33, p. 4]. Thus, the Fund's liability cannot be premised on the actions of MPH. Although not argued by the Fund, the Court gives notice of its intent to *sua sponte* grant the Fund summary judgment on this basis.

Plaintiffs shall file a memorandum in opposition if they oppose summary judgment in favor of the Fund within ten business days of the date of this Ruling and Judgment. *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 641 (5th Cir. 2007) ("[W]hen the district court gives a party ten days notice[,] . . . a court may grant summary judgment *sua sponte* on grounds not urged in a pending motion."). Plaintiffs' memorandum shall not exceed ten pages.

  **2.  Dr. Perry**

Dr. Perry treated King on January 2 and 3, 2001. However, the parties appear to agree that Dr. Perry's actions on January 3, 2001, are covered by the Federal Tort Claims Act. *See* [Doc. No. 62]. Accordingly, the Court will consider Dr. Perry's actions separately.

    **a.  January 2, 2001**

According to Dr. Irby, Dr. Perry committed malpractice on January 2, 2001, by prescribing

Coprofen.[2] Although not argued by Plaintiffs,[3] Dr. Irby opines that King suffered an allergic reaction to Coprofen, the generic form of Vicoprofen, and that this allergic reaction led to her death. [Doc. No. 93-3, 11-12, 9:12–13]. Dr. Irby opines that Dr. Perry breached the standard of care by prescribing Coprofen because

> A.   . . .her chart is clearly marked that she's allergic to aspirin [(a.k.a. ASA)]; she is also marked as being allergic to Toradol, both of which are nonsteroidal anti-inflammatory agents. And the chart is marked twice as her being allergic to Vicoprofen. What he gave her was the generic form of Vicoprofen called Coprofen.
>
> . . .
>
> And the element in the Coprofen to which one is generally allergic, if so, is Ibuprofen. . . .But if you are allergic to one of them, generally you are allergic to others. I would be most suspicious of the Vicoprofen, Coprofen, being synonyms, if you will, having caused the allergic reaction that she had that evening.
>
> Q.   Was the administration of Vicoprofen or Coprofen by Dr. Perry, in light of known drug allergies, another violation of the standard of care?
>
> A.   Yes.

[Doc. No. 93-3, 11:23–12:17].

The Fund offers Dr. Cimino's supplemental expert opinion in which he opines that "[i]t is clear from prior lab values and blood cultures. . .that it was the overwhelming sepsis and staph that

---

[2]Dr. Irby does not clearly opine that Dr. Perry should have diagnosed or treated King for pneumonia on January 2, 2001. The Court has reviewed Dr. Irby's testimony and finds that he opines that King should have been diagnosed with pneumonia when she came **back** to the emergency room on January 3, 2001. *See* [Doc. No. 93-3, 8:4–9; 8:18–9:2; 9:23–25; 10:3–9].

[3]Plaintiffs argue only that the continued administration of **Amantadine** after King presented with an allergic reaction violated the standard of care. *See* [Doc. No. 93, p. 3]. However, Dr. Irby opines that Coprofen "[i]n all likelihood" caused the allergic reaction, which, in his opinion, led to her death. [Doc. No. 93-3, 11:22].

7

killed [King]. . . .[and that] the allergic reaction. . .played no rol[e] in [King's] demise." [Doc. No. 97, p. 7, ¶23]. Dr. Cimino also takes issue with Dr. Irby's factual and substantive statements regarding King's drug allergies:

> Dr. Irby goes on to say incorrectly. . .that [King's] chart is marked twice saying [she] is allergic to Vicoprofen. There is no such entry on Exhibits A or B. There is an entry that [King] was allergic to Aspirin but Vicoprofen is Motrin not Aspirin and is efficacious for patients allergic to Aspirin. In fact [King] was given Motrin on 1/02/01 at approximately 0400 with no reaction.

[Doc. No. 97, p. 8, ¶27].

Although Dr. Irby's opinion contains incorrect statements of fact regarding whether King's charts state that she was allergic to Vicoprofen or Coprofen, he does not appear to base his opinion on this statement.

On summary judgment, the Court cannot resolve the conflict between Dr. Cimino's opinion that Ibuprofen is efficacious for patients allergic to Aspirin and Dr. Irby's opinion that King was likely allergic to Ibuprofen because she was allergic to Aspirin, or the conflicting opinions about the cause of death. This is a classic case of dueling experts, and the Court finds that Plaintiffs have raised a genuine issue of material fact whether Dr. Perry committed medical malpractice on January 2, 2001, by prescribing Coprofen.

The Fund's Motion for Summary Judgment based on the January 2, 2001 actions of Dr. Perry is DENIED.

### b.     January 3, 2001

Although not argued by the Fund, the Court gives notice of its intent to *sua sponte* grant the Fund summary judgment for Dr. Perry's actions on January 3, 2001. Consistent with the settlement agreement approved by the Court, Plaintiffs can only recover from the USA for malpractice Dr. Perry

committed on January 3, 2001, including failing to diagnose and treat King's pneumonia, failing to timely order an antibiotic, and failing to prescribe the correct antibiotic.

Plaintiffs shall file a memorandum in opposition if they oppose summary judgment in favor of the Fund within ten business days of the date of this Ruling and Judgment. *See Lozano*, 489 F.3d at 641. Plaintiffs' memorandum shall not exceed ten pages.

### 3. Dr. Adiele

Dr. Irby has offered opinions regarding actions that could have been taken by Dr. Adiele, including continuing to administer the medications prescribed by Dr. Perry on January 2, 2001, one of which caused a lethal allergic reaction [Doc. No. 93-3, 11–12], and failing to timely diagnose and treat King's pneumonia [Doc. No. 93-3, 7–10]. However, Dr. Irby did not expressly opine that Dr. Adiele breached the standard of care. Dr. Irby has only offered express opinions regarding Dr. Perry. By failing to provide expert testimony directly addressing Dr. Adiele, Plaintiffs have failed to raise a genuine issue of material fact for trial. *See Samaha v. Rau*, 2007-1726 (La. 02/26/08); 977 So. 2d 880, 884 ("Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony.").

The Fund's Motion for Summary Judgment based on the actions of Dr. Adiele is GRANTED.

### III. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [Doc. No. 87] filed by the Fund on the medical malpractice claims of Plaintiffs is GRANTED IN PART and DENIED IN PART. The Motion for Summary Judgment is GRANTED IN PART with respect to Dr. Adiele's actions, and Plaintiffs' claims are DISMISSED WITH PREJUDICE, and DENIED IN PART with

respect to Dr. Perry's January 2, 2001 actions.

The Court gives notice of its intent to *sua sponte* grant summary judgment in favor of the Fund with respect to MPH's actions and Dr. Perry's January 3, 2001 actions, without prejudice to the right of Plaintiffs to pursue those claims against the USA.

Plaintiffs shall file a memorandum in opposition if they oppose summary judgment in favor of the Fund within ten business days of the date of this Ruling and Judgment. Plaintiffs' memorandum shall not exceed ten pages.

MONROE, LOUISIANA, this 17 day of July, 2009.

                                                              ROBERT G. JAMES
                                                              UNITED STATES DISTRICT JUDGE